UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP,

WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP

Debtors.
_______________________________/

Chapter 11

Case No. 8:16-bk-08167-MGW

*Jointly Administered under*
Case No. 8:16:-bk-8167-MGW

JEFFREY WARREN,
LIQUIDATING TRUSTEE,

Plaintiff,

v.

CPIF LENDING, LLC,

Defendant.
_______________________________/

Adv. No. 8:18-ap-00102-MGW

**DEFENDANT CPIF LENDING, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT (D.E. 93)**

Defendant CPIF Lending, LLC ("**CPIF**"), by and through its undersigned attorneys, hereby answers the Second Amended Complaint ("**SAC**") and asserts its Affirmative Defenses as follows:

**ANSWER**

CPIF denies the statements set forth in the Preliminary Statement that precedes the allegations of the SAC, and demands strict proof thereof.

1. CPIF admits the allegations contained in Paragraph 1 of the SAC.

2. Paragraph 2 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions.

3. Paragraph 3 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions.

4. Paragraph 4 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions.

**PLAINTIFF, DEFENDANT, AND OTHER INTERESTED PARTIES**

5. CPIF admits the allegations contained in Paragraph 5 of the SAC.

6. CPIF admits the allegations contained in Paragraph 6 of the SAC.

7. CPIF denies the allegations contained in Paragraph 7 of the SAC, except that CPIF admits that it is a Washington for-profit corporation formed in 2013 and that it is exempt from registration requirements under Fla. Stat. § 605.0902.

8. CPIF admits the allegations contained in Paragraph 8 of the SAC.

9. CPIF denies the allegations contained in Paragraph 9 of the SAC, except that CPIF admits that the Debtors and WNT[1] owned and operated University Village, and that University Village consisted of the ILF, the ALF and the SNF.

10. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 10, and all subparts thereto, of the SAC.

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the SAC.

11. CPIF denies the allegations contained in Paragraph 11, and all subparts thereto, of the SAC, except that (a) CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegation concerning Bartle's state of residency, and (b) CPIF admits that there was a transfer of the limited partnership interests of the Debtors in or around March 2014, and thereafter a transfer of the 1% general partnership interest of the Debtors.

## GENERAL ALLEGATIONS

A. Overview of CCRCs

12. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 12 of the SAC.

13. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 13 of the SAC.

14. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 14 of the SAC.

15. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 15 of the SAC.

16. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 16 of the SAC.

B. Debtors' Loan with Horizon, Proposed Sale to Bartle, and Deed-in-Lieu-of Foreclosure Agreement

17. CPIF denies the allegations contained in Paragraph 17 of the SAC, except that it admits that University Village is a CCRC and that its residents entered into various forms of contracts when they moved into University Village.

18. CPIF denies the allegations contained in Paragraph 18 of the SAC, except that it admits that prior to March 31, 2014, the Debtors and Horizon LP UV Lender, LLC ("Horizon") had entered into a loan agreement pursuant to which the Debtors had borrowed, on a secured basis, approximately $20 million from Horizon.

19. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 19 of the SAC.

20. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 20 of the SAC.

21. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 21 of the SAC.

22. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 22 of the SAC.

23. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 23 of the SAC.

24. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 24 of the SAC, and all subparts thereto, and states that the deed-in-lieu of foreclosure agreement, being a written document, speaks for itself.

25. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 25 of the SAC, and again states that the deed-in-lieu of foreclosure agreement speaks for itself. .

26. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 26 of the SAC.

27. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 27 of the SAC.

28. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 28 of the SAC.

29. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 29 of the SAC.

C. <u>The Leveraged Buyout</u>

30. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 30 of the SAC.

31. CPIF denies the allegations contained in Paragraph 31 of the SAC, except that it admits that CPIF entered into, among other documents, the Original CPIF Loan Documents, and states that the Original CPIF Loan Documents, being written documents, speak for themselves.

32. CPIF denies the allegations contained in Paragraph 32 of the SAC, except that it admits that CPIF entered into, among other documents, the Original CPIF Loan Documents, and states that the Original CPIF Loan Documents, being written documents, speak for themselves.

33. CPIF denies the allegations contained in Paragraph 33 of the SAC, except that it admits that on or about March 31, 2014, CPIF entered into, among

other documents, the Original CPIF Loan Documents, and states that the Original CPIF Loan Documents, being written documents, speak for themselves.

34. CPIF denies the allegations contained in Paragraph 34 of the SAC, except that it admits that CPIF entered into, among other documents, the Original CPIF Loan Documents, and states that the Original CPIF Loan Documents, being written documents, speak for themselves.

35. CPIF denies the allegations contained in Paragraph 35 of the SAC, except that it admits that CPIF entered into, among other documents, the Original CPIF Loan Documents, and states that the Original CPIF Loan Documents, being written documents, speak for themselves.

36. CPIF denies the allegations contained in Paragraph 36 of the SAC, and all subparts thereto, except that it admits that the proceeds from the loan evidenced by the Original CPIF Loan Documents were disbursed in accordance with the Loan Closing Statement executed by the Debtors on or about March 31, 2014.

37. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 37 of the SAC, except that it admits that the Debtors have alleged in their bankruptcy cases that they did not own the membership interests in WNT and further that on or about March 31, 2014, WNT and USAmeriBank entered into a loan transaction, and the loan agreement, promissory note, and mortgage memorializing that loan transaction, being written documents, speak for themselves.

38. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 38 of the SAC.

39. CPIF denies the allegations contained in Paragraph 39 of the SAC.

40. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 40 of the SAC, except that CPIF admits that in March, 2015, DFS commenced receivership proceedings against the Debtors.

D. CPIF and the Debtors' Improper Use of the $1,750,000 Capital Improvement Reserve to Fund the Expansion of Bartle's Retirement Community Empire and the Issuance of New Bond Debt to CPIF

41. CPIF denies the allegations contained in Paragraph 41 of the SAC, except that CPIF admits that on August 25, 2014, CPIF, the Debtors and BVM Management entered into the First Amendment and that the First Amendment, being a written document, speaks for itself.

42. CPIF denies the allegations contained in Paragraph 42 of the SAC, except that CPIF admits that on August 25, 2014, CPIF, the Debtors and BVM Management entered into the First Amendment and that the First Amendment, being a written document, speaks for itself.

43. CPIF denies the allegations contained in Paragraph 43 of the SAC, except that CPIF admits that on August 25, 2014, CPIF, the Debtors and BVM Management entered into the First Amendment and that the First Amendment, being a written document, speaks for itself.

44. CPIF denies the allegations contained in Paragraph 44 of the SAC, except that CPIF admits that on August 25, 2014, CPIF, the Debtors and BVM Management entered into the First Amendment and that the First Amendment, being a written document, speaks for itself, and further that CPIF purchased the bonds referenced in the First Amendment.

45. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 45 of the SAC.

E. Additional Amendments of the CPIF Loan Documents, Including Amendment to Add so-called "Devonshire Language" Honoring Residency Agreements

46. CPIF denies the allegations contained in Paragraph 46 of the SAC, and all subparts thereto, except that CPIF admits that a total of five amendments to the Loan Agreement were executed, and that such amendments, being written documents, speak for themselves.

47. CPIF denies the allegations contained in Paragraph 47 of the SAC, and all subparts thereto, except that CPIF admits that a total of five amendments to the Loan Agreement were executed, and that such amendments, being written documents, speak for themselves.

48. CPIF denies the allegations contained in Paragraph 48 of the SAC, except that CPIF admits that on July 1, 2016, the Debtors and CPIF entered into the Forbearance Agreement, and that the Forbearance Agreement, being a written document, speaks for itself.

49. CPIF denies the allegations contained in Paragraph 49 of the SAC, except that CPIF admits that on July 1, 2016, the Debtors and CPIF entered into the Forbearance Agreement, and that the Forbearance Agreement, being a written document, speaks for itself.

F. The Debtors File for Bankruptcy

50. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 50 of the SAC, except that CPIF admits that on September 22, 2016 the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

51. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 51 of the SAC.

52. CPIF denies the allegations contained in Paragraph 52 of the SAC, except that CPIF admits that pursuant to the Confirmation Order the Bankruptcy Court confirmed the Plan, and that the Plan, being a written document, speaks for itself.

53. CPIF denies the allegations contained in Paragraph 53 of the SAC, except that CPIF admits that the Confirmation Order was entered more than 20 months after the Debtors' bankruptcy cases were filed.

54. CPIF denies the allegations contained in Paragraph 54 of the SAC, except that CPIF admits that pursuant to the Confirmation Order the Bankruptcy Court confirmed the Plan, and that the Plan, being a written document, speaks for itself.

G. CPIF's Claim Nos. 2 and 22

55. CPIF admits that it filed Claim Nos. 2 and 22, and that Claims Nos. 2 and 22, being written documents, speak for themselves. CPIF further admits that on December 13, 2016, CPIF filed its Motion for Interest, Attorneys Fees and Expenses Pursuant to 11 U.S.C. § 506(b) (the "Section 506(b) Motion") which it supplemented 3 times.

**COUNT I: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

56. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 56 of the SAC.

57. Paragraph 57 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions.

58. CPIF denies the allegations contained in Paragraph 58 of the SAC, including all subparts thereto.

59. CPIF denies the allegations contained in Paragraph 59 of the SAC.

60. CPIF denies the allegations contained in Paragraph 60 of the SAC, including all subparts thereto.

61. CPIF denies the allegations contained in Paragraph 61 of the SAC.

62. CPIF denies the allegations contained in Paragraph 62 of the SAC.

**COUNT II: CIVIL CONSPIRACY**

63. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 63 of the SAC.

64. CPIF denies the allegations contained in Paragraph 64 of the SAC, and all subparts thereto, except that CPIF admits that it entered into the Original CPIF Loan Documents, a total of 5 amendments to the CPIF Loan Agreement, the Forbearance Agreements and other documents and agreements relating to CPIF's loan to the Debtors (collectively referred to herein as the "CPIF Loan Documents"), and that the CPIF Loan Documents, being written documents, speak for themselves.

65. CPIF denies the allegations contained in Paragraph 65 of the SAC.

66. CPIF denies the allegations contained in Paragraph 66 of the SAC.

67. CPIF denies the allegations contained in Paragraph 67 of the SAC.

68. CPIF denies the allegations contained in Paragraph 68 of the SAC.

**COUNT III: NEGLIGENCE**

69. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 69 of the SAC.

70. Paragraph 70 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions. To the extent that a response is required, CPIF denies the legal conclusions contained in Paragraph 70 of the SAC.

71. Paragraph 71 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions. To the extent that a response is required, CPIF denies the legal conclusions contained in Paragraph 71 of the SAC.

72. CPIF denies the allegations contained in Paragraph 72 of the SAC.

73. CPIF denies the allegations contained in Paragraph 73 of the SAC, and all subparts thereto.

74. CPIF denies the allegations contained in Paragraph 74 of the SAC.

75. CPIF denies the allegations contained in Paragraph 75 of the SAC.

**COUNT IV: DEEPENING INSOLVENCY**

76. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 76 of the SAC.

77. CPIF denies the allegations contained in Paragraph 77 of the SAC.

78. CPIF denies the allegations contained in Paragraph 78 of the SAC, including all subparts thereto.

**COUNT V: USURY**

79. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 79 of the SAC.

80. CPIF denies the allegations contained in Paragraph 80 of the SAC, except that CPIF admits that it entered into the CPIF Loan Documents, and that the CPIF Loan Documents, being written documents, speak for themselves.

81. CPIF denies the allegations contained in Paragraph 81 of the SAC, except that CPIF admits that it entered into the CPIF Loan Documents, and that the CPIF Loan Documents, being written documents, speak for themselves.

82. CPIF denies the allegations contained in Paragraph 82 of the SAC.

83. Paragraph 83 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions. To the extent that a response is

required, CPIF states that Sections 687.02 and 687.071(2) of the Florida Statutes speak for themselves.

84. CPIF denies the allegations contained in Paragraph 84 of the SAC, including all subparts thereto.

**COUNT VI: CONTRACTUAL SUBORDINATION**

85. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 85 of the SAC.

86. CPIF denies the allegations contained in Paragraph 86 of the SAC, except that CPIF admits that it entered into the Second Amendment, and that the Second Amendment, being a written document, speaks for itself.

87. Paragraph 87 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions. To the extent that a response is required, CPIF states that Section 651.114(8)(a) of the Florida Statutes speaks for itself.

88. CPIF denies the allegations contained in Paragraph 88 of the SAC.

**COUNT VII: EQUITABLE SUBORDINATION**

89. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 89 of the SAC.

90. CPIF denies the allegations contained in Paragraph 90 of the SAC, including all subparts thereto.

91. CPIF denies the allegations contained in Paragraph 91 of the SAC.

92. CPIF denies the allegations contained in Paragraph 92 of the SAC.

93. CPIF denies the allegations contained in Paragraph 93 of the SAC.

**COUNT VIII: DECLARATORY RELIEF REGARDING THE VALIDITY, PRIORITY, AND EXTENT OF CPIF'S LIEN**

94. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 94 of the SAC.

95. CPIF denies the allegations contained in Paragraph 95 of the Complaint, except that CPIF admits that it filed Claims Nos. 2 and 22 and the Section 506(b) Motion, and that Claims Nos. 2 and 22 and the Section 506(b) Motion, being written documents, speak for themselves.

96. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 96 of the SAC.

97. CPIF denies the allegations contained in Paragraph 97 of the SAC, including all subparts thereto, except that CPIF admits that the Plaintiff purports to seek the declarations contained in subparts (a) and (b) of Paragraph 97.

**COUNT IX: DECLARATORY RELIEF REGARDING CPIF'S OR ITS SUCCESSORS' OBLIGATION TO HONOR RESIDENT OBLIGATIONS AND DETERMINATION OF SECURED STATUS**

98. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 98 of the SAC.

99. CPIF denies the allegations contained in Paragraph 99 of the SAC, except that CPIF admits that Section 506(b) of the Bankruptcy Code speaks for itself.

100. CPIF denies the allegations contained in Paragraph 100 of the SAC, except that CPIF admits that Section 506(b) of the Bankruptcy Code speaks for itself.

101. CPIF admits the allegations contained in Paragraph 101 of the SAC.

102. CPIF admits the allegations contained in Paragraph 102 of the SAC, except that CPIF admits that the Second Amendment and Section 651.114(8) of the Florida Statutes, being written documents, speak for themselves

103. CPIF denies the allegations contained in Paragraph 103 of the SAC, except that CPIF admits that the Plaintiff purportedly asserts the contentions described in Paragraph 103 of the SAC.

104. CPIF denies the allegations contained in Paragraph 104 of the SAC, except that CPIF admits that Plaintiff purports to seek a declaration as set forth in Paragraph 104 of the SAC.

105. CPIF denies the allegations contained in Paragraph 105 of the SAC, except that CPIF admits that Plaintiff purports to seek a determination as set forth in Paragraph 105 of the SAC.

106. CPIF denies the allegations contained in Paragraph 106 of the SAC.

**COUNT X: DECLARATORY RELIEF RECHARACTERIZING THE CPIF "LOAN" AS EQUITY**

107. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 107 of the SAC.

108. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 108 of the SAC.

109. CPIF denies the allegations contained in Paragraph 109 of the SAC except that CPIF admits that the website, being a written document, speaks for itself.

110. CPIF denies the allegations contained in Paragraph 110 of the SAC except that CPIF admits that the website, being a written document, speaks for itself.

111. CPIF denies the allegations contained in Paragraph 111 of the SAC.

112. CPIF denies the allegations contained in Paragraph 112 of the SAC.

113. CPIF denies the allegations contained in Paragraph 113 of the SAC.

114. CPIF denies the allegations contained in Paragraph 114 of the SAC.

115. Paragraph 115 of the SAC contains legal conclusions and CPIF is not required to respond to such legal conclusions.

**COUNT XI: AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS ACTUAL FRAUD UNDER 11 U.S.C. §§ 544 AND 550**

116. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 116 of the SAC.

117. CPIF denies the allegations contained in Paragraph 117 of the SAC, including all subparts thereto.

118. CPIF denies the allegations contained in Paragraph 118 of the SAC.

119. CPIF denies the allegations contained in Paragraph 119 of the SAC.

120. CPIF denies the allegations contained in Paragraph 120 of the SAC.

**COUNT XII: AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS CONSTRUCTIVE FRAUD UNDER 11 U.S.C. §§ 544 AND 550**

121. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 121 of the SAC.

122. CPIF denies the allegations contained in Paragraph 122 of the SAC.

123. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 123 of the SAC.

124. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 124 of the SAC.

125. CPIF denies the allegations contained in Paragraph 125 of the SAC.

126. CPIF denies the allegations contained in Paragraph 126 of the SAC.

**COUNT XIII: AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS CONSTRUCTIVE FRAUD UNDER 11 U.S.C. §§ 544 AND 550**

127. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 127 of the SAC.

128. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 128 of the SAC.

129. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 129 of the SAC.

130. CPIF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 130 of the SAC.

131. CPIF denies the allegations contained in Paragraph 131 of the SAC.

132. CPIF denies the allegations contained in Paragraph 132 of the SAC.

**OBJECTION TO CLAIMS NOS. 2 AND 22**

133. CPIF denies the allegations contained in Paragraph 133 of the SAC, except that CPIF admits that the Plaintiff has purported to bring an objection to Claim Nos. 2 and 22.

134. CPIF reincorporates herein its responses to Paragraphs 1 through 55 of the SAC and thereby responds to Paragraph 134 of the SAC.

135. CPIF denies the allegations contained in Paragraph 135 of the SAC, including all subparts thereto.

136. CPIF denies the allegations contained in Paragraph 136 of the SAC, except that CPIF admits that the Plaintiff has purported to reserve the right to amend, modify, or supplement its objection to Claim Nos. 2 and 22.

137. CPIF denies each and every allegation set forth in the SAC except for those allegations specifically admitted to above.

**Facts Common to All Affirmative Defenses**[2]

1. Pursuant to that certain Loan Agreement dated as of March 31, 2014 (the "**Loan Agreement**"), CPIF extended a loan (the "**CPIF Loan**") in favor of the Debtors in the original principal amount of $9,500,000. The CPIF Loan proceeds retired, in part, the mortgage loan (the "**Horizon Loan**") held by Horizon LP UV Lender, LLC ("**Horizon**"). Upon information and belief, the balance of the Horizon Loan was satisfied from a $15,000,000 loan (the "**USAB Loan**") extended by USAmeriBank n/k/a Valley National Bank ("**USAB**"). The CPIF Loan also funded,

[2] CPIF expressly reserves the right to amend both the factual allegations and affirmative defenses contained herein should CPIF become aware of additional facts and/or affirmative defenses through discovery.

in part, the acquisition by BVM University Village, LLC ("**BVMUV**") of the Debtors' limited partnership interests that were held by Westport Senior Living Investment Fund, L.P. ("**WSILF**"). WSILF's sole general partner is Westport Asset Management, LLC ("**WAM**"), and WAM's president is Lawrence L. Landry. WSILF, WAM and Lawrence Landry are collectively referred to as the "**Landry Group**."

2. The CPIF Loan was secured, pursuant to a Mortgage, Assignment of Rents, Security Agreement and Fixture Filing (the "**Mortgage**"), by a first priority lien on substantially all of the Debtors' assets, including without limitation the Debtors' real property.

3. The obligations of the Debtors to CPIF in respect of the CPIF Loan are guaranteed by (i) BVM Management, Inc. ("**BVM**") pursuant to that certain Unconditional Guaranty of Payment and Performance dated as of March 31, 2014, and (ii) IMH Healthcare, LLC ("**IMH**", and together with BVM collectively referred to as the "**Guarantors**") pursuant to that certain Unconditional Guaranty of Payment and Performance dated as of August 10, 2015. IMH also pledged certain collateral to CPIF pursuant to that certain Pledge Agreement dated August 10, 2015.

4. The sale of the Debtors' limited partnership interests to BVMUV was done without any involvement whatsoever by CPIF. In fact, the purchase and sale agreement for the Debtors' limited partnership interests between BVM Management/Westport Holdings, L.P. and WSILF was signed in September, 2013, long before CPIF was even approached about the CPIF Loan. As well, the Horizon

deed-in-lieu of foreclosure agreement with the Debtors ("**Deed-in-Lieu Transaction**") specifically contemplates a sale of the Debtors' limited partnership interests, so long as the purchase price was sufficient to repay the Horizon Loan and the closing was no later than December 15, 2013. While the Horizon Loan payoff and Debtors' limited partnership sale occurred 90 days later than contemplated, Horizon consented to the transaction. At no time, however, did CPIF have a relationship, business, contractual or otherwise, with any members of the Landry Group, and CPIF played no role in the decision by the Landry Group to sell the Debtors' limited partnership interests to BVMUV instead of consummating the Deed-in-Lieu Transaction.

5. Furthermore, the CPIF Loan was an arms'-length transaction and CPIF had no prior relationship, business, contractual or otherwise, with BVMUV, John Bartle, any of the Debtors' limited or general partners, or their principals, or any members of the Landry Group.

6. Prior to the Petition Date, CPIF voluntarily agreed to extend the term of the CPIF Loan (the "**Term**") on five separate occasions at the request of the Debtors. The fifth extension expired and the CPIF Loan ultimately matured on June 30, 2016.

7. Pursuant to Section 6.3 of the Loan Agreement, a Capital Expenditure Reserve was established in the amount of $1,750,000. On August 25, 2014, BVM, CPIF and the Debtors, by and through their general partners, entered into Amendment No. 1 to the Loan Agreement ("**Amendment No. 1**") which provided

that $1,000,000 that was held in the Capital Expenditure Reserve established under the Loan Agreement would be disbursed to the Debtors and BVM in order to fund the "Securities Account" as defined in Amendment No. 1. Amendment No. 1 specifically provided, at Recital Q, that the aforementioned use of $1,000,000 from the Capital Expenditure Reserve would benefit the Debtors. Upon information and belief, the decision by the Debtors to request Amendment No. 1 was a proper exercise of business judgment by the Debtors' management (its general partners and their President, Lawrence Landry). CPIF had no actual or constructive knowledge that the transaction embodied in Amendment No. 1 was in any way improper. Furthermore, at no time, either prior to, or after, Amendment No. 1, were the Debtors denied a request for a capital improvement using funds from the Capital Expenditure Reserve.

8. Additionally, pursuant to Section 12.1 of the Loan Agreement, the Debtors represented that subsequent to the closing of the CPIF Loan they intended to seek approval to transfer their 1% general partnership interests to BHMSILFGP, LLC ("**BHMSILFGP**"). CPIF consented to this transfer (the "**BHMSILFGP Transfer**") subject to certain covenants and conditions, including without limitation the representation that the Debtors would provide CPIF with written notice of any provisional and final approval from any governmental authority for the BHMSILFGP Transfer within three (3) business days of receiving such approval.

9. On December 29, 2014, with no authorization approval, ratification or acquiescence by CPIF, the Debtors' general partners resigned and Compliance Concepts, LLC ("**Compliance Concepts**") was elected general partner of the Debtors. Compliance Concepts thereafter resigned, and IMH was elected general partner of the Debtors. *See* Amendment No. 2 to the Loan Agreement ("**Amendment No. 2**"). As well, the ownership interests in the Debtors that were held by BHMSILF, LLC were transferred to JF Consultants, LLC ("**JF Consultants**"). CPIF consented to these transfers subject to certain covenants and conditions, including without limitation the representation that the Debtors would provide CPIF with written notice of any provisional and final approval from any governmental authority within three (3) business days of receiving such approval.

10. However, in neither the Loan Agreement nor Amendment No. 2, nor anywhere else, did CPIF assume any obligation to obtain regulatory approval or provisional authority for the transfer of the general (or limited) partnership interests in the Debtors or to confirm that regulatory approval had been given for said transfer(s). CPIF assumed no obligation to the Debtors, or the Debtors' creditors, including the residents, to confirm that the transfer of the general and/or limited partnership interests in the Debtors was in compliance with applicable law. That is, CPIF took no action in relation to the transfer of the general or limited partnership interests.

11. On July 1, 2016, CPIF and the Debtors executed a Forbearance Agreement (the "**Forbearance Agreement**"), under which, *inter alia*: (a) the Term

of the CPIF Loan was further extended to November 30, 2016; (b) the Debtors agreed to make monthly interest payments at the non-default rate of 11% per annum; and (c) interest would accrue at the default rate of 25% per annum as set by the Loan Agreement. *See* Loan Agreement at § 5. The Forbearance Agreement did not modify the interest rates set by the Loan Agreement. The Forbearance Agreement provided a direct benefit to the Debtors in that it provided that accrued interest in excess of the non-default rate would be waived if the Debtors repaid all outstanding principal on or before November 30, 2016. *See* Forbearance Agreement at §§ 5(d), 6(a) and 6(c).

12. The Debtors commenced their bankruptcy cases on September 22, 2016 prior to the expiration of the extended Term of the CPIF Loan under the Forbearance Agreement. The Term of the CPIF Loan expired on November 30, 2016 without further extension. The Debtors did not make any payments of principal, interest or any other amounts due under the Loan Agreement to CPIF during these cases.

13. Prior to and during these cases, the Debtors made numerous admissions concerning the CPIF Loan and the secured claims, including, without limitation, as follows:

- **Forbearance Agreement**. In paragraph 2 of the Forbearance Agreement, the Debtors stated that the "Loan balance consists of total outstanding principal in the amount of Nine Million Five Hundred Thousand and 00/100 ($9,500,000.00)."
- **Schedules of Assets and Liabilities**. On Schedule D of the Debtors' Schedules of Assets and Liabilities, the Debtors scheduled a secured claim in favor of CPIF in the principal amount of $9,500,000.00. The Debtors did not schedule the debt as contingent, unliquidated or disputed.

- **The Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (Docket No. 9) (the "Cash Collateral Motion")**. In paragraph 8 of the Cash Collateral Motion, the Debtors stated: "Prior to the Petition Date, [CPIF] loaned approximately $9,500,000.00 to the Debtors. The approximate current principal balance owed on CPIF's loan is $9,500,000.00. The obligations owed to CPIF are secured by mortgages on and security interests in real and personal property owned by the Debtors."
- **The Debtors' Emergency Motion for Authorization to Obtain Post-Petition Financing from SCM Specialty Finance webunities Fund, L.P., to Grant Junior Liens on Certain Assets, Superpriority Administrative Expenses Status, and to Grant Other Relief (Docket No. 221) (the "DIP Motion")**. In paragraph 8 of the DIP Motion, the Debtors stated: "Prior to the Petition Date, [CPIF] loaned approximately $9,500,000.00 to the Debtors. The approximate current principal balance owed on CPIF's loan is $9,500,000.00. The obligations owed to CPIF are secured by mortgages on and security interests in real and personal property owned by the Debtors."

14. In addition, paragraph 20 of the Order on (1) the Debtors' Emergency Motion for Authority to Obtain Post-Petition Financing From SCM Specialty Finance Opportunity Fund, L.P., to Grant Junior Liens on Certain Assets, Superpriority Administrative Expense Status, and to Grant Other Relief, and (2) Granting Relief to Obtain Financing from US AmeriBank (the "**DIP Order**", Docket No. 275), provides as follows:

> *No Priming*. Notwithstanding anything herein to the contrary, any liens, mortgages or interests of the DIP Lender in the collateral described in the (a) Loan Agreement dated, dated as of March 31, 2014, by and between the Debtors and [CPIF], as amended, (b) Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 31, 2014 from the Debtors to CPIF, as recorded in Official Records Book 22502, Page 1793 in the Public Records of Hillsborough County, Florida, (c) UCC-1 Financing Statement Recorded in Hillsborough County, FL on April 7, 2014 as

> Instrument No. 2014111827 for Westport Holdings Tampa, Limited Partnership, and (d) UCC-1 Financing Statement Recorded in Hillsborough County, FL on April 7, 2014 as Instrument No. 2014111828 for Westport Holdings Tampa II, Limited Partnership, including but not limited to the cash collateral as that term is defined in section 363(a) of the Bankruptcy Code (collectively, the "CPIF Property"), shall be junior in priority to CPIF's liens, mortgages, or interests in the CPIF Property. Nothing in this Order shall prime, or shall be deemed to have primed, CPIF's liens, mortgages or interests in the CPIF Property.

Similar language appears in paragraph 21 of the Order on the Debtors' Emergency Motion for Authority to Modify DIP Loan Approval Order and Enter into Amendments to DIP Loan Documents (Docket No. 776).

**Affirmative Defenses**

1. Plaintiff's claims are barred by the doctrine of in pari delicto. The Debtors' actions, by their officers, past and present general and limited partners, including the Landry Group and the Bartle Group, are imputed to the Debtors. Any malfeasance of the Debtors or their principals (including without limitation, the Landry Group and the Bartle Group) is therefore imputed to Plaintiff. See Official Comm. Of Unsecured Creditors of PSA Inc. v. Edwards, et al, 437 F.3D 1145 (11th Cir. 2006) ("[I]f a claim of [Debtor] would have been subject to the defense of in pari delicto at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense."). As such, Plaintiff is precluded from seeking recovery from CPIF.

2. The Debtors, by their general and/or limited partners, and their officers, authorized, approved, ratified and acquiesced in CPIF's conduct complained of in this action.

3. As a result of the foregoing authorization, approval, ratification and acquiescence by the Debtors, Plaintiff, as representative of the Debtors' estates, has unclean hands.

4. As a result of the foregoing authorization, approval, ratification and acquiescence by the Debtors, Plaintiff's claims against CPIF have been waived.

5. The Debtors' own actions, by their general and/or limited partners, and their officers, were the sole and proximate cause of any damages, and Plaintiff's recovery, if any, should be reduced to the extent that such damages were caused by the Debtors' own actions.

6. The Debtors' conduct, by general and/or limited partners, and their officers, in (a) structuring, agreeing to, and facilitating the March 31, 2014 Transaction, including all amendments thereto, (b) authorizing and allowing the substitution of its general and limited partners, and (c) requesting funds from the Capital Improvement Reserve, is protected by the business judgment rule.

7. CPIF at all times acted within the course and scope of reasonable commercial standards.

8. CPIF's actions with respect to the CPIF Loan are all protected by the business judgment rule.

9. Plaintiff has failed to state a cause of action against CPIF for aiding and abetting breach of fiduciary duty because the underlying breach of fiduciary is based upon the decision of the Landry Group to sell the Debtors' limited and general partnership interests and Plaintiff has not and cannot allege any actions taken by CPIF that aided and/or abetted the Landry Group in connection with such transaction.

10. Plaintiff has failed to state a cause of action against CPIF for aiding and abetting breach of fiduciary duty because the underlying breach of fiduciary is based upon the decision of the Landry Group to sell the Debtors' limited and general partnership interests and CPIF had no relationship with, or owed any duty to, the Landry Group.

11. As merely potential purchasers of the Debtors limited and general partners, neither BVMUV, BVM, IMH, JF Consultants, BHMSILF GP, LLC, BHMSILF, LLC, Compliance Concepts, LLC, Rebecca Bartle, nor John Bartle (the "**Bartle Group**") had any fiduciary relationship with the Debtors at the time of the March 31, 2014 Transaction, and therefore owed no fiduciary obligations to the Debtors or the Debtors' creditors, and thus there can be no claim asserted by Plaintiff against CPIF for aiding and abetting breach of fiduciary duty arising from the March 31, 2014 Transaction.

12. Plaintiff has not, and cannot, establish that the Deed in Lieu Transaction would have been more favorable to the Debtors than the March 31, 2014 Transaction.

13. Plaintiff fails to state claims against CPIF premised on the March 31, 2014 Transaction because CPIF undertook no duty to the Debtors or anyone else, other than as set forth in the documents memorializing the CPIF Loan.

14. CPIF had no independent duty to disclose facts to the Debtors, and had no "conscious intent" to aid any wrongdoing by the Landry Group or the Bartle Group, with respect to the alleged conspiracy claim and/or the aiding and abetting claim.

15. Given that CPIF had no relationship with the Landry Group, and the Bartle Group owed no fiduciary duty to Debtors at the time of the March 31, 2014 Transaction, Plaintiff is estopped from asserting that CPIF "substantially assisted" the Landry Group or the Bartle Group in the alleged underlying breach of fiduciary duty.

16. Plaintiff is estopped from asserting any wrongdoing by CPIF with respect to that portion of the proceeds from the CPIF Loan that were used to retire a portion of the Horizon Loan and fund the capital improvement reserve, both of which worked to the benefit of the Debtors and their creditors, including the residents.

17. Plaintiff is estopped from characterizing the partial retirement of the Horizon Loan through proceeds from the CPIF Loan as the dissipation of assets since the partial retirement of the Horizon Loan benefitted the Debtors and their creditors, including the residents.

18. CPIF complied with all applicable statutes and government regulations, and had no independent obligation to ensure that the Debtors acted in compliance with all statutes and governmental regulations applicable to the Debtors.

19. CPIF complied with all industry standards applicable to its own conduct with regard to the CPIF Loan.

20. Because CPIF simply made a loan to Debtors, and undertook no independent duties other than as set forth in the documents memorializing the CPIF Loan, Plaintiff is estopped from asserting any unlawful acts or lawful acts by unlawful means by CPIF in furtherance of an alleged conspiracy.

21. CPIF is exempt from Florida licensing or registration requirements pursuant to Chapter 494, Florida Statutes.

22. Plaintiff has failed to state a claim as to deepening insolvency since neither Florida law nor Delaware law recognize an independent tort of deepening

insolvency. *See* Fla. Stat. § 620.1901(1); *Miller v McCown De Leeuw & Co. (In re Brown Sch.)*, 386 B.R. 37, 44 (Bankr. D. Del. 2008); *Amato v. Chazal (In re Southwest Fla. Heart Grp., P.A.)*, Case No. 06-00910, 2006 Bankr. LEXIS 1556, *6-7 (Bankr. M.D. Fla. 2006).

23. In operating University Village, the Debtors failed to exercise their own reasonable care and diligence to mitigate their damages, if any, and Plaintiff is therefore barred from any recovery.

24. CPIF acted reasonably and in good faith at all times based on the facts and circumstances known by it. Accordingly, Plaintiff is barred from any recovery in this action.

25. The amount of any recovery by Plaintiff should be offset by any and all amounts due CPIF by the Debtors.

26. The doctrine of recoupment precludes any recovery by Plaintiff.

27. The Debtors participated in and are responsible for the very actions for which they now seeks redress and thus Plaintiff, as successor in interest to the Debtors, has waived any right to pursue the Debtors' claims.

28. CPIF performed its duties in good faith, and in the exercise of good business judgment.

29. Plaintiff's tort claims are barred by the economic loss doctrine.

30. Plaintiff is estopped from denying the express language of Amendment No. 1 to the Loan Agreement, which provides that use of the funds in the Capital Expenditure Reserve inures to the Debtors' benefit.

31. Plaintiff, as successor in interest to the Debtors, has waived any claim relating to Amendment No. 1 to the Loan Agreement by virtue of the express terms of Recital Q of Amendment No. 1 that the use of the funds in the Capital Expenditure Reserve inures to the Debtors' benefit.

32. Pursuant to Fla. Stat. § 768.81, and *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993), CPIF can only be held liable for its proportionate share of liability for Plaintiff's alleged damages, and therefore Plaintiff's monetary recovery in this matter, if any, must be reduced by the proportionate share of liability assignable to all other persons and entities, including without limitation, USAmeriBank, the Landry Group, the Bartle Group, Eli Freiden, and Shabse Fuchs, as well as all other parties identified through discovery (CPIF

specifically reserves the right to supplement this affirmative defense as additional *Fabre* parties are identified).

33. Plaintiff's claims as to the Capital Expenditure Reserve constitute a request for financial accommodation by CPIF to the Debtors which is barred by Fla. Stat. § 687.0304.

34. Plaintiff's claims as to the Capital Expenditure Reserve are barred by virtue of the Debtors' failure to request funds for capital improvements that were denied by CPIF.

35. Plaintiff suffered no damages as a result of the transfer of funds from the Capital Expenditure Reserve since at no time, either prior to, or after, the parties' entry into Amendment No. 1, did the Debtors make a request for capital improvement funds that was denied by CPIF.

36. Plaintiff is estopped from asserting claims relating to the Capital Expenditure Reserve by virtue of the Debtors' failure to request funds for capital improvements that were denied by CPIF.

37. Plaintiff's claims for punitive, exemplary or consequential damages are barred by the express waiver in the Loan Agreement. *See* Loan Agreement at § 13.14.

38. Plaintiff's usury claim is barred by the Interest Limitation provision of the Promissory Note.

39. Any usury claim is necessarily premised on the terms of the Promissory Note, which is governed by Washington Law, which has no usury limitation.

40. Any usury claim is necessarily premised on the terms of the Loan Agreement, which is governed by Washington Law, which has no usury limitation.

41. Plaintiff has failed to state a claim as to the subordination of the PIP claims to current and former residents, as Fla. Stat. § 651.114 does not contemplate inclusion of the PIP claims as an entrance fee.

42. Because Fla. Stat. § 651.114 does not contemplates inclusion of the PIP claims as an entrance fee, Plaintiff is estopped from denying CPIF's lien priority over the PIP claims, as there is no statutory or contractual basis for CPIF being subordinated to these claims.

43. Plaintiff's claim for contractual and equitable subordination is barred because neither Amendment No. 2 to the Loan Agreement nor Fla. Stat. § 651.114(8) provide for a lender's subordination.

44. Plaintiff's claims are barred to the extent they are either non-core proceedings or core proceedings that require adjudication by the District Court or a state court with proper jurisdiction.

45. Plaintiff's claims for aiding and abetting breach of fiduciary duty, conspiracy, and deepening insolvency are barred because they claim speculative and uncertain damages.

46. Plaintiff's claim for contractual lien subordination is barred by the statute of frauds.

47. Plaintiff's claims are barred because they show no actual injury arising from CPIF's actions.

48. Any reliance by Plaintiff on Fla. Stat. § 651.114 is vitiated and barred by the filing of this lawsuit, including without limitation seeking emotional and physical damages allegedly incurred by the residents. *See* Fla. Stat. § 651.114(8)(a)(3) (providing that a lender's obligation to honor and not disturb residents' rights is no longer enforceable upon the assertion of a claim inconsistent with the rights of the lender).

49. Plaintiff has failed to state a claim for recharacterizing the CPIF Loan as equity as the existence and terms of the Loan documents establish the presence of a loan.

50. Plaintiff is barred from seeking to recharacterize the CPIF Loan as equity based upon the numerous prior representations by the Debtors that the Loan was a loan.

51. Plaintiff's recharacterization claims have been waived as a result of the numerous prior representations by the Debtors that the CPIF Loan was a loan.

52. Plaintiff's recharacterization claims have been waived as a result of Paragraph 20 of the DIP Order and the Debtors' consistent acknowledgement in the bankruptcy of the CPIF Loan as a loan.

53. All transfers by CPIF alleged to be fraudulent were made in good faith, and in exchange for reasonably equivalent value to the Debtors.

54. The transfers made by CPIF are protected by 11 U.S.C. § 550(b), in that the transferee took "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."

Dated: July 13, 2018

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Traci H. Rollins*
Traci H. Rollins (Florida Bar No. 769071)
1900 Phillips Point
777 South Flagler Drive
West Palm Beach, Florida 33401
Telephone: (561) 650 7200
Facsimile: (561) 655-1509
traci.rollins@squirepb.com

Mark A. Salzberg, Esq. (Florida Bar No. 965741)
2550 M Street, N.W.
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
mark.salzberg@squirepb.com

and

Elliot M. Smith, Esq. (Pro Hac Vice)
4900 Key Tower, 127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8644
Facsimile: (216) 479-8780
elliot.smith@squirepb.com

*Counsel for CPIF Lending, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF on this 13th day of July, 2018.

By: */s/ Traci H. Rollins*
Traci H. Rollins
Florida Bar No. 769071

010-8647-9670/1/AMERICAS